UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 10-20699-CR-GRAHAM/GOODMAN

UNITED STATES OF AMERICA,

v.

MARINALVA PLACENSIO,
JOSE MENDONCA,
MIZAEL CRUZ,
INGRID MORFI, and
RAFAEL MORALES,

      Defendants.
_____/

## REPORT AND RECOMMENDATION ON RESTITUTION
## FOR PLACENSIO, MENDONCA, CRUZ, MORFI, AND MORALES

THIS MATTER is before the Court upon four orders of reference (DE## 273, 275, 280 & 293) from the District Court concerning restitution issues arising from criminal judgments entered against Maria Placensio, Jose Mendonca, Mizael Cruz, Ingrid Morfi, and Rafael Morales. Those orders directed the Undersigned to conduct a hearing and enter a Report and Recommendation.

Through no fault of the United States Attorney's Office or the Probation Department, none of the victims or alleged victims -- despite the government's efforts to obtain the information needed for the evidentiary foundation necessary for a restitution award -- have stepped forward to participate in the restitution process. The Undersigned does not believe it is the responsibility of the prosecutor, the probation officer or this Court to beg and plead with the victims in a frenetic effort to cajole them into seeking restitution which they have opted not to pursue.

In a way, this scenario provides a graphic illustration of the famous proverb, "You can lead a horse to water, but you can't make it drink."[1] Of course, in the instant case, the horses (i.e., the victims) refused to even approach the water. Restitution is for victims, not a windfall for the government. When victims behave as though they do not want restitution and fail to make the modest effort necessary to obtain restitution -- such as submitting a succinct sworn declaration -- then the Court will not force restitution on an unwilling beneficiary (or potential beneficiary).

Because restitution is for victims and no victim responded to the government's outreach attempts, and because the government at the restitution hearings had no evidence whatsoever regarding the propriety of restitution or the amount of restitution if the remedy were appropriate in the first place, I respectfully recommend that the District Court order **NO RESTITUTION ($0)** from these specific defendants.

I. PROCEDURAL BACKGROUND

The five defendants at issue in this Report all entered guilty pleas to Count 1 of the 15-count Indictment, conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. (DE## 172, 176, 180, 181, & 190). The United States dismissed all other counts applicable to each defendant at the time of their sentencing.

---

[1] This proverb appears to be the oldest English proverb that is still in use today. It was recorded as early as 1175 in *Old English Homilies:* "'Hwa is thet mei thet hors wettrien the him self nule drinken,'" which is translated as "who can give water to the horse that will not drink of its own accord?" http://www.phrases.org.uk/meanings/you-can-lead-a-horse-to-water.html (last visited June 28, 2011). The "lead a horse to water" proverb has been in continuous use since the 12th century and has sometimes been intentionally twisted for humorous purposes. For example, famed comic Stan Laurel, of Laurel & Hardy fame, famously joked, "You can lead a horse to water, but a pencil must be led." http://www.brainyquote.com/quotes/quotes/s/stanlaurel327091.html (last visited June 28, 2011).

The Presentence Investigation Reports for the five defendants listed above all contained the same conclusion about restitution, under the "Sentencing Options" section: "The victims' losses are not yet ascertainable." The PSI reports all explained that the Court should set a date for "final determination of the victims' losses, not to exceed 90 days after sentencing, pursuant to 18 U.S.C. § 3664(d)(5)."

The five defendants at issue in this Report were all sentenced by the District Court. The five judgments all contained identical language about restitution: "The determination of restitution is **deferred for ninety days**. An Amended Judgment in a Criminal Case (A) 245C) will be entered after such a determination." (emphasis supplied).

The 90-day deferments noted in the criminal judgments mirror the 90-day window specifically mentioned in 18 U.S.C. § 3664(d)(5), which is part of the Mandatory Victims Restitution Act. That subsection provides, in relevant part: "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."

The "matters regarding restitution" were referred to the Undersigned in separate referral orders (DE## 273, 275, 280 & 293).

The Court originally held a restitution hearing on May 13, 2011. (DE## 276, 286, & 294.) Approximately a week before that hearing, the U.S. Probation Officer issued a memorandum, explaining that none of the seven (7) victims had responded to the Government's request that they complete and return "Declaration of Victim Losses."

The Probation Officer confirmed that he had not received any declarations, affidavits or any other type of evidence from any purported victim. He did, however, note that three inquiries were returned as undeliverable. By way of conclusion, the probation officer summarized, "As such, the probation office does not have information concerning restitution."

At that May 13, 2011 hearing, the government moved *ore tenus* for a continuance of the hearing on the ground that the two remaining non-sentenced defendants, German Rodriguez and Mauricio Gomez, were scheduled to be sentenced on June 13, 2011, and that it would be more efficient to hold a combined restitution hearing for all defendants, including those two additional defendants afterward. (DE# 299.) Because the first defendant was sentenced on April 25, 2011 (DE# 272) and because the 90-day period would not expire until July 25, 2011, the Court agreed to the Government's request and rescheduled the hearing for July 1, 2011. (*Id.*) The Court subsequently rescheduled the restitution hearing again for June 27, 2011, on its own initiative, due to an internal Court scheduling conflict. (DE# 320.)

The District Court ultimately decided to postpone sentencing Rodriguez and Gomez until July 25, 2011. (DE# 325.) On June 24, 2011 (the Friday before the Monday restitution hearing), the government filed a written motion to continue the June 27, 2011, restitution hearing until two weeks *after* the District Court sentenced Rodriguez and Gomez. (DE# 330). The government again argued that it would be more efficient to hold a combined hearing as to all defendants. The Court denied the government's second motion to continue and ordered the five defendants, their attorneys, the probation representative, and the government to attend as scheduled. (DE# 331.) After denying the

motion to continue, the Court also learned last Friday that defendant Placensio had already started serving her sentence and was being held out of the District under Bureau of Prisons supervision and that the Marshal's Service would not be able to transport Placensio to Miami for the June 27, 2011, hearing.

At the June 27, 2011 scheduled restitution hearing, Placensio's counsel represented that he consulted with his client and she waived her right to appear in person at the hearing. The Court ordered Placensio's counsel to obtain a signed waiver and to file this waiver by the end of business on Friday, July 1, 2011.

At this point during the hearing, the Court was prepared to take testimony and to receive any other evidence concerning restitution. But the government informed the Court that, despite the best efforts of both the United States Attorney's Office and the probation officer assigned to this case, **no victim financial institution responded to repeated requests to sign affidavits, to participate in the hearing, or to otherwise provide restitution evidence.** The government suggested that as a result the Court should once more continue the hearing to a time at least two weeks after the next sentencing (currently set for July 25, 2011) for the dual purposes of allowing the victims to respond and allowing the Court to hold a combined hearing including the two presently non-sentenced defendants.

If granted, the government's *ore tenus* request would mean that the restitution hearing would be after July 25, 2011. It would also mean that the District Court would not "determine" restitution for *at least* several more weeks after the hearing, as the undersigned would need to issue an evidence-based Report and Recommendation and also give the parties time to file objections and responses to the objections. Thus, the

5

government's scheduling theory could easily result in the postponement of a restitution "determination" until early September 2011 – long after expiration of the 90-day deadline established by Section 3664(d)(5) of the Mandatory Victims Restitution Act.  At best, the District Court would not "determine" restitution until mid-August 2011, which would *still* be beyond the expiration of the 90-day deadline for some of the defendants.

The government suggested that the statutory 90-day deadline in a multiple defendant case does not start to run until the last defendant gets sentenced.  This interpretation, of course, might mean that a defendant would have his restitution determined *years* after his sentencing.  Indeed, it is not difficult to imagine a scenario where a low-level, cooperating defendant in a complex, multi-defendant case would be sentenced and **actually serve his jail sentence** before being saddled with a restitution order (entered after the last defendant, who went through a hypothetical three-month trial, was sentenced, almost two years later).

In response to a question from the Court, the government said it had no authority to support that flexible, expansive view of the statutory 90-day deadline.  Instead, the AUSA explained that the theory is merely his understanding. The probation officer advised the Court that he, too, was unaware of the theory that pinned the 90-day deadline in a multi-defendant case to the date the last defendant is sentenced.  Likewise, defense counsel were not aware of any precedent to validate the theory.

Because the statute does not expressly or even implicitly provide that the 90-day deadline can be extended indefinitely until the last defendant is sentenced, because the government had no authority to support its view, and because the District Court's sentencing judgments for *each* defendant expressly said that the restitution issue would

6

be deferred for 90 days (only), the Court denied this *ore tenus* request and determined that it was prudent to go forward with the scheduled restitution hearing as to Placensio, Mendonca, Cruz, Morfi, and Morales.

The probation officer confirmed that he had not received any declarations or evidence from any of the seven purported victims. The government had no other evidence to offer and did not suggest that the District Court could enter a restitution award in the absence of evidence concerning causation of damages to a particular victim and the dollar amount of each victim's loss. The AUSA explained: "I don't know if I'm in a position to take a position. I mean, in the sense that it's really who has the interest in getting their money. I mean, this is money that's going to the lenders. It's not going to the United States. So if they're not responding to the request [for a declaration summarizing the loss, for restitution purposes], I'm not sure what I can do, Your Honor."

The AUSA also explained that he had never had a case where none of the victims came forward in response to a request to participate in the restitution process. One of the defense lawyers, however, explained that he was involved in a relatively recent case before U.S. District Judge Daniel T. Hurley where the restitution amount was significantly less than the actual losses because most of the victims did not come forward and, according to defense counsel, Judge Hurley did not award restitution for any amount unless the victims came forward. Defense counsel estimated that only 49 or so victims (out of approximately 558 victims) responded – and that Judge Hurley therefore entered a restitution order which was more than $40 million **less** than the loss for sentencing purposes because of the comparatively paltry response from the victims.

7

In the Judge Hurley case mentioned by defense counsel, *United States v. Frank Anthony DeSantis*, Case 08-60161-cr-DTKH, the information (DE# 3) alleged a conspiracy that "would defraud investors of more than $40,000,000 by the use of false statements of material facts and by omission of material facts." Although the loss there was apparently more than **$40 million**, Judge Hurley's restitution order (DE# 122) against lead defendant Frank Anthony DeSantis was only approximately **$4.7 million**. The publicly available documentation on CM/ECF does not explain the reason why the restitution order appears to be less than 15% of the loss, but defense counsel's informal email memo (Exhibit 1) explains that "the reason for the difference between loss for guidelines and restitution purposes was the lack of response from the victims."[2]

After the Court announced that the scheduled restitution hearing would go forward, the AUSA conceded that there was nothing to move forward on because there were no affidavits or other evidence concerning the victims' losses.

There could be many reasons why none of the victims are interested in the restitution process involving these five defendants. Some of them might be out of business, which means there is no longer any entity to receive restitution payments. Some may have already received payments from insurance carriers and may not have actual losses which they deem worthy of seeking restitution from criminal defendants. Some may have concluded that the effort would not be worth the potential reward. Some may have conducted a risk-loss analysis and concluded that it would be financially illogical to spend time and money participating in the process. Some may be

---

[2] According to defense counsel's recollection, fewer than 50 victims (out of "well in excess of 250 victims" and maybe even more than 400 victims) responded to requests for their input on restitution.

8

administratively challenged and disorganized and inefficient. Because no victim provided a substantive response, we do not know which of these reasons (or others) might be responsible for the total lack of a response. What we do know, however, is that no victim is interested enough in the process to have voluntarily participated.

## II. ANALYSIS

Under 18 U.S.C. § 3664(d) (5), the Court is required to hold a hearing to determine restitution within 90 days after sentencing. As noted, the government suggested at the hearing that this deadline is global in nature so that as long as a restitution hearing occurred within ninety-days of *any* defendant's sentencing, restitution could be ordered as to other defendants whose sentencing occurred more than ninety days earlier. But when pressed for authority to support its position, the government acknowledged that it had not researched the issue and that this was simply its "understanding."

The record shows that the District Court sentenced the first of these defendants, Placensio, on April 25, 2011. (DE# 272.) Ninety-days after April 25, 2011, is on or about July 24, 2011. Thus it appeared to the Court at the hearing that, at least as to Placensio, if the government's un-researched "understanding" is incorrect, then by waiting until the two remaining defendants were sentenced on July 25, 2011, to hold the hearing, the Court risked violating the statutory deadline. And even if a restitution hearing were held immediately after the July 25, 2011, sentencing, this would still allow insufficient time as to other already-sentenced defendants. For example, this would allow only one day as to defendant Cruz (sentenced on April 26, 2011) for this Court to make a

recommendation, for the parties to object and respond to objections, and for the District Court to enter its judgment

Once this Court makes a recommendation to the District Court, there is a built-in administrative delay of generally at least four weeks before a final restitution judgment can be entered. This is due to the time provided to the parties to object, to respond to each other's objections, and for the District Court to review these objections and the evidence and to draft its amended final judgment. Thus, this Court decided the prudent course of action was to go forward with the scheduled hearing.[3] This decision is further supported by the obvious fact that restitution is ultimately for the benefit of the *victim* and on this occasion, despite repeated attempts to obtain their cooperation, the victims failed to cooperate to the point that they did not even respond to the government's requests.[4]

---

[3] The Court is aware that under the recent United States Supreme Court opinion in *Dolan v. United States*, 230 S. Ct. 2533 (2010), the District Court *may* have the authority to consider and order restitution beyond the statutory ninety-day deadline. But this exception provides that a sentencing court which misses the 90-day statutory deadline retains power to order restitution "at least where … the sentencing court made clear prior to the deadline's expiration that it would order restitution, leaving open (for more than 90 days) only the amount." *Id.* at 2537. In *Dolan*, the sentencing court advised the defendant at his sentencing that he could "anticipate that such an award will be made in the future." In addition, the sentencing court's written judgment, entered a few days later, stated, in pertinent part, that "restitution is applicable" and the probation officer later prepared a report which concluded that the "total amount of restitution" was approximately $105,000. *Id.* In the instant case, by contrast, the five judgments said "the determination of restitution is deferred for ninety days." The *Dolan* language was much more open ended than Judge Graham's language here. The Undersigned also focused on the practical consequences flowing from a delay beyond the statutory 90 days. In particular, the undersigned does not deem it a wise practice to knowingly violate a statutory deadline in a matter referred by a district court and then prepare a Report and Recommendation advising that an exception might apply and might permit restitution. Therefore, this Court determined it was prudent not to continue its hearing on the mere hope that at some future time the District Court would determine that it could avail itself of the exception.

[4] According to the government, at least one victim financial institution sent a representative to testify at the trial. Therefore, this Court can only assume that since that

Under the Victim and Witness Protection Act, the sentencing court has "substantial discretion **over the entire process** leading to a possible restitution order." *United States v. Richard*, 738 F.2d 1120, 1122 (10th Cir. 1984) (emphasis added). It is "apodictic that restitution can **only** be ordered to redress a loss **to a victim**." *United States. v. Vankin*, 112 F.3d 579, 591 (1st Cir. 1997) (emphasis added).

Not only must a restitution order be framed only to compensate a victim's loss, but the losses sustained by those victims must result from the defendant's offense. *United States v. Sablan*, 92 F.3d 865, 870 (9th Cir. 1996) (partially reversing restitution order because it improperly included consequential damages not caused by defendant). *See generally United States v. Messner*, 107 F.3d 1448, 1455 (10th Cir. 1997) (appellate court determined that the concealments did not cause actual loss to creditors and held that the government did not meet its burden of establishing the amount of some of the loss for restitution purposes). *Cf. United States v. Diamond*, 969 F.2d 961 (10th Cir. 1992) (holding that, under the pre-1990 amendment to the restitution statute, a defendant convicted of filing false reports to the Small Business Administration could not properly be sentenced to pay restitution in the amount of the SBA's total loss on the loan to defendant's business without evidence that the false reports caused the entire loss).

The applicable statute requires that any "dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

---

time, the victims, sophisticated financial institutions, have either lost interest in obtaining restitution or are so disorganized that they were unable to respond. Either way, the Court is satisfied that the victims were given a fair opportunity to participate in the hearing and, through no fault of the defendants or the government, did not do so.

The government, due to the victims' noncooperation, proffered no evidence regarding either the type or amount of restitution. The government had no evidence from the alleged victims at the May 13, 2011 hearing and still had no evidence to submit at the June 27, 2011 hearing. The Court does not fault the United States Attorney's Office or the Probation Department, of course. They cannot force a purported victim to submit evidence to support a restitution award. If the victims do not care to seek restitution, then the Court is left with a situation where the government has not met its burden. In the instant case concerning these five defendants, there is therefore no evidentiary basis to order restitution under the statute, and I respectfully recommend that the District Court order **NO RESTITUTION ($0)** from Maria Placensio, Jose Mendonca, Mizael Cruz, Ingrid Morfi, and Rafael Morales.

This report and recommendation should **not** be interpreted as also recommending no restitution from German Rodriguez or Mauricio Gomez, who have not yet been sentenced. Should the District Court refer any restitution matter regarding those two defendants to me (due to a conclusion that the victim's losses are not ascertainable by 10 days before sentencing – the trigger point in the statute) and should any of the alleged victims respond with evidence regarding restitution by that time, then the Court will at that time make a recommendation so that the District Court can make a timely restitution determination as to those defendants.[5]

---

[5] The Defendants, including the two who have yet been sentenced, played different roles in the fraudulent conspiracy. According to the government and the Presentence Investigation Reports, Defendants Rodriguez and Gomez appear to be the most culpable, as they were the developers who owned and sold the condominium units. Some of the five defendants in the instant Report played significantly less culpable roles. For example, Defendant Morfi served as a straw purchaser.

### III. RECOMMENDATION

I respectfully recommend that the District Court order no restitution from any of the five defendants discussed above.

---

Based on a possible perception that the more-culpable Defendants (Rodriguez and Gomez) may have more assets or might be "collectible," the victims may decide to participate in restitution proceedings concerning those not-yet-sentenced defendants. But again, restitution is for their benefit and the United States Attorney's Office, the Probation Department and the Court will not compel any victim to seek restitution and will not insist that they submit information to obtain restitution.

## IV. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have fourteen (14) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the District Court. Each party may file a response to the other party's objection within 14 days of the objections. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Court of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749-50 (11th Cir. 1988)). Any objection must also include a copy of the hearing transcript.

**RESPECTFULLY RECOMMENDED** in Chambers, at Miami, Florida, this 28th day of June, 2011.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Donald L. Graham
All counsel of record